John COLLINS and Debbie
Southworth, Plaintiffs,

v.

RED ROOF INNS, INC., Defendant.

No. CIV.A.2:00–0938.

United States District Court,
S.D. West Virginia,
At Charleston.

March 13, 2003.

J. Michael Ranson, Cynthia M. Ranson, Tara K. Jennings, Ranson Law Offices, Charleston, WV, for Plaintiffs.

Arden J. Curry, II, Pauley, Curry, Sturgeon & Vanderford, Charleston, WV, for Defendant.

## MEMORANDUM OPINION AND ORDER

HALLANAN, Senior District Judge.

Currently pending before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint and Defendant's Memorandum in Support of its Motion to Dismiss. In response, Plaintiffs filed Plaintiffs' Response to Defendant's Motion to Dismiss. In reply thereto, Defendant filed Red Roof Inns, Inc.'s Reply Memorandum in Support of its Motion to Dismiss. Also currently pending before the Court is the Memorandum of Red Roof Inns, Inc. in Support of its Renewed Motion to Dismiss or, Alternatively, Motion for Summary Judgment. In response, Plaintiffs filed Plaintiffs' Response to Defendant's Memorandum in Support of its Renewed Motion to Dismiss or, Alternatively, Motion for Summary Judgment. Finally, in reply thereto, Defendant filed the Reply Memorandum of Red Roof Inns, Inc. in Support of its Renewed Motion to Dismiss or, Alternatively, Motion for Summary Judgment. Having reviewed the aforementioned Motions, all memoranda both in support thereof and in opposition thereto, as well as all relevant case and statutory law, the Court is now prepared to issue its decision.

## PROCEDURAL HISTORY

On September 15, 2000, Plaintiffs, John Collins and Debbie Southworth, jointly filed a Complaint against Defendant, Red Roof Inns, Inc., in the Circuit Court of Kanawha County alleging defamation of

character. On October 6, 2000, Defendant filed a Notice of Filing for Removal based upon diversity of citizenship, an Answer to Plaintiffs' Complaint, and Motion to Dismiss. On November 13, 2000, Defendant filed Defendant's Memorandum in Support of its Motion to Dismiss. On December 4, 2000, Plaintiffs filed Plaintiffs' Response to Defendant's Motion to Dismiss. On December 14, 2000, Defendant filed Red Roof Inns, Inc.'s Reply Memorandum in Support of its Motion to Dismiss.

On April 5, 2001, the Court entered an Order wherein it stayed all matters pending in the above-styled litigation pending certification, of the issue of the applicability of an absolute privilege to the facts in this case, to the Supreme Court of Appeals of West Virginia. On June 14, 2001, the Court entered an Order of Certification wherein it certified the following question to the Supreme Court of Appeals of West Virginia:

> Whether an individual or entity is absolutely privileged to publish defamatory matter to another individual or entity, when such defamatory statement is preliminary to the filing of a[c]omplaint in the matter but the statement is relevant to a proceeding which is seriously contemplated and when the subject of defamatory matter is third persons who would not be parties to the litigation that was contemplated.

On November 8, 2001, the Supreme Court of Appeals of West Virginia entered an Order wherein it agreed to accept the certified question presented to it and established a briefing schedule.

On June 10, 2002, the Court received the Supreme Court of Appeals of West Virginia's Answer to the Certified Question and on July 11, 2002, the Court received a copy

of the final mandamus and original record of the Supreme Court of Appeals of West Virginia's Answer to the Certified Question. Pursuant to its authority to reformulate certified questions, W.Va.Code § 51–1A–4 (1996), the Supreme Court of Appeals of West Virginia reformulated the certified question as follows:

> Is a party to a dispute absolutely privileged to publish to the opposing party involved in the dispute defamatory matter regarding a third person where no judicial action is presently pending, but where a judicial action is contemplated in good faith and is under serious consideration, and where the defamatory statement is related to the proposed judicial proceeding?

Thereafter, on July 17, 2002, the Court entered an Order wherein it reinstated the above-styled matter to its active docket. Additionally, the Court reinstated Defendant's pending Motion to Dismiss to its active docket.

## STATEMENT OF FACTS [1]

Plaintiff, John Collins, is a citizen and resident of Hurricane, West Virginia. Plaintiff Debbie Southworth is a citizen and resident of Alpharetta, Georgia. Defendant Red Roof Inns, Inc. is a Delaware corporation, with its principal place of business located in Dallas, Texas. Emmett J. Gossen, Jr., at all times relevant to Plaintiffs' Complaint, was the Executive Vice President of Defendant Red Roof Inns, Inc. and was the designated representative to act on behalf of the Plan Administrator under Defendant Red Roof Inns, Inc.'s Change of Control Severance Plan ("Severance Plan").

---

1. Prior to certification, the Court required the parties to enter into a Statement of Stipulated Relevant Facts. The Statement of Facts contained in this Memorandum Opinion and Order has been stipulated to by both Plaintiffs and Defendant, with exception to the parties' positions regarding the Plaintiffs' cessation of employment.

In 1999, Defendant underwent a restructuring. As a part of the restructuring, various employees either voluntarily or involuntarily terminated their employment. Also in connection with this restructuring, Defendant implemented a "Change of Control Severance Plan."

Until October 1999, Defendant employed both Plaintiffs. Plaintiffs allege that they each voluntarily entered into a mutual agreement with Defendant whereby Plaintiffs would discontinue their employment relationships with Defendant in exchange for severance payments and benefits provided for in Defendant's Severance Plan. Plaintiffs further allege that prior to the aforementioned agreements of October 1999, neither Plaintiff had ever received counseling from Defendant regarding their respective performances as employees of Defendant. Conversely, Defendant alleges that until October 1999, Defendant employed Plaintiffs; however, Defendant alleges that both Plaintiffs entered into mutual Severance Pay Agreements (pursuant to Defendant's Severance Plan) as a result of their respective alleged terminations.

Also in October 1999, Andrew Bensabat[2], who is not a party to the instant litigation, resigned from his employment with Defendant and claimed his entitlement to benefits under the Severance Plan. Upon learning of Defendant's position that Mr. Bensabat was not entitled to severance pay and benefits, Robert McKee, Mr. Bensabat's attorney, contacted Defendant on behalf of his client, demanding that Mr. Bensabat receive benefits purportedly due to him under the Change of Control Severance Plan. By correspondence dated October 25, 1999, and addressed to Defendant, Mr. McKee stated as follows:

> "You are advised that should the company fail to pay Mr. Bensabat the benefits due him under the severance plan within five (5) business day from the date appearing above, it is my intention to exhaust the appeals remedy provided for in the severance plan and, if necessary, *to pursue an action in the United States District Court to recover the benefits, as well as prejudgment interest and attorney's fees ..."*

(emphasis added).

Emmett J. Gossen, Jr., who at all times relevant to this litigation was the Executive Vice President of Defendant and therefore, was permitted to act on behalf of the Plan Administrator of Defendant's Change of Control Severance Plan, responded to Mr. McKee's letter by correspondence dated October 27, 1999. Mr. Gossen denied that Mr. Bensabat was entitled to any benefits under the Severance Plan, and referred Mr. McKee to the appeal process designated in the Severance Plan. Thereafter, on November 3, 1999, Mr. McKee, on behalf of his client, Mr. Bensabat, appealed the Plan Administrator's decision to deny Mr. Bensabat benefits. Mr. McKee's appeal letter provided, in pertinent part:

> [W]e note that the Plan Administrator has approved the payment of benefits to similarly-situated VPOs who have resigned from their employment with Red Roof Inns. It is our understanding that former VPO John Collins [chose] to pursue other business opportunities and was given the full measure of benefits available under the Plan. Likewise, we understand that Debbie Southworth, another former VPO, resigned from her employment, citing her discomfort with the changes initiated by the new management group. She likewise received benefits under the Plan. We further understand that other present and former employees have either been promised benefits under the Plan or have actually

---

**2.** Apparently, Andrew Bensabat is a resident of Tampa, Florida.

have [sic] received such benefits despite the fact that they were not made "redundant" as a result of the Change of Control. The conduct of the Plan Administrator in granting benefits to others who were similarly situated to Mr. Bensabat and denying Mr. Bensabat's valid application for benefits constituted arbitrary and capricious conduct on the part of the Administrator.

With respect to its appeal process, Defendant's Severance Plan expressly states:

> [w]ithin thirty (30) days after receipt of a written appeal . . . , the Plan Administrator shall notify the Employee of the final decision. The final decision shall be in writing and *shall include specific reasons for the decision*, written in a manner calculated to be understood by the claimant, and specific references to the pertinent Plan Provisions on which the decision is based.

(emphasis added). By correspondence dated December 1, 1999, Mr. Gossen, acting on behalf of the Plan Administrator, responded to the appeal filed by Mr. McKee on behalf of Mr. Bensabat. Mr. Gossen's correspondence stated, in pertinent part:

> Your assertion that the Plan Administrator acted in an "arbitrary and capricious" manner with regard to benefits afforded to John Collins and Debbie Southworth is simply wrong on the facts. Collins and Southworth were terminated, of their employer's own motion, based on factors relating to evaluation of their performance and potential future contribution. The fact that either may have wished to be fired, for whatever personal reason of their own, is simply irrelevant.

Defendant did not publish or cause to be published the above-quoted statements regarding Plaintiffs other than forwarding the aforementioned correspondence to Mr. McKee, the attorney representing Mr.

Bensabat in his appeal. Either Mr. Bensabat or Mr. McKee subsequently notified Plaintiffs of the above-quoted statements.

In December 1999, Mr. Bensabat filed suit against Red Roof Inns, Inc. in the United States District Court for the Middle District of Florida, Tampa Division. Mr. Bensabat's lawsuit alleged, *inter alia*, that Defendant Red Roof Inns, Inc. had improperly failed to provide Mr. Bensabat benefits pursuant to the Change of Control Severance Plan. By order entered April 19, 2001, the United States District Court for the Middle District of Florida, Tampa Division, found in favor of Defendant, Red Roof Inns, Inc. Upon learning of Defendant's assertion that they were terminated, Plaintiffs Collins and Southworth filed this lawsuit against Defendant in the Circuit Court of Kanawha County and this matter came to be before this Court in the manner described *supra*.

## DISCUSSION

A motion to dismiss pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure* should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In assessing a motion to dismiss for failure to state a claim, the Court must accept all well-pled allegations set forth in the complaint as true and must construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir.1997). "The court need not, however, accept unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events." *Morgan v. Graco Children's Prods., Inc.*,

184 F.Supp.2d 464, 465–66 (D.Md.2002) (citations omitted).

"A Rule 12(b)(6) motion to dismiss for failure to state a claim does not permit the Court to look outside the complaint, and is thus distinguishable from a challenge to the Court's subject matter jurisdiction, which allows the Court to 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Gasner v. County of Dinwiddie,* 162 F.R.D. 280, 281 (E.D.Va.1995). If a court does, in fact, consider matters outside the pleading when deciding a Rule 12(b)(6) motion to dismiss, the court is required to convert the aforementioned motion into a motion for summary judgment and must dispose of the motion as provided in Rule 56. FED. R. CIV. P. 12(b). Notably, the Fourth Circuit recognizes an exception to the so-called conversion rule, as it applies to documents, whose authenticity is not disputed, which are attached to a motion to dismiss. "[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment." *Gasner,* 162 F.R.D. at 282.

In the case at bar, as previously explained, the Supreme Court of Appeals of West Virginia answered the following Certified Questioned in the affirmative:

> Is a party to a dispute absolutely privileged to publish to the opposing party involved in the dispute defamatory matter regarding a third person where no judicial action is presently pending, but where a judicial action is contemplated in good faith and is under serious consideration, and where the defamatory statement is related to the proposed judicial proceeding?

The Court holds that the authenticity of the Supreme Court of Appeals of West Virginia's Answer to the Certified Question is not disputed, as the Supreme Court of Appeals of West Virginia possesses the authority to answer questions certified to it by this Court. W.Va.Code § 51–1A–3. Additionally, the Answer to the Certified Question was not attached to the Complaint. As previously mentioned, on April 5, 2001, the Court entered an Order wherein it stayed all matters pending in this litigation pending certification, of the issue of the applicability of an absolute privilege to the facts in this case, to the Supreme Court of Appeals of West Virginia. After the Court's July 17, 2002 Order that, *inter alia,* reinstated Defendant's Motion to Dismiss to its active docket, on August 26, 2002, Defendant filed its Renewed Motion to Dismiss along with a copy of the Answer to the Certified Question, which was filed as an accompanying exhibit. Thereafter, on September 5, 2002, Plaintiffs filed their response to the aforementioned Renewed Motion to Dismiss and on September 13, 2002, Defendant filed its reply brief. For the foregoing reasons, the Court holds that the facts of the case at bar squarely fit within the exception to the conversion rule and therefore, the Court will consider Defendant's Motion to Dismiss as a Rule 12(b)(6) motion and will not convert it to a motion for summary judgment.

The parties stipulated that upon learning of Defendant's position that Andrew Bensabat was not entitled to severance pay and benefits, Robert McKee, Mr. Bensabat's attorney, contacted Defendant on behalf of his client, demanding that Mr. Bensabat receive benefits purportedly due to him under the Change in Control Severance Plan. By correspondence dated October 25, 1999, and addressed to Defendant, Mr. McKee stated as follows:

"You are advised that should the company fail to pay Mr. Bensabat the benefits due him under the severance plan within five (5) business day from the date appearing above, it is my intention to exhaust the appeals remedy provided for in the severance plan and, if necessary, *to pursue an action in the United States District Court to recover the benefits, as well as prejudgment interest and attorney's fees ..."*

(emphasis added). Based on the aforementioned language, the Court finds that Mr. Bensabat had contemplated in good faith and gave serious consideration to commencing a judicial proceeding against Defendant.

Subsequent to receiving Mr. McKee's October 25, 1999 correspondence, Defendant, through Mr. Gossen, made the allegedly defamatory statements concerning Plaintiffs. By correspondence dated December 1, 1999, Mr. Gossen, acting on behalf of the Plan Administrator, responded to the appeal filed by Mr. McKee on behalf of Mr. Bensabat. Mr. Gossen's correspondence stated, in pertinent part:

Your assertion that the Plan Administrator acted in an "arbitrary and capricious" manner with regard to benefits afforded to John Collins and Debbie Southworth is simply wrong on the facts. Collins and Southworth were terminated, of their employer's own motion, based on factors relating to evaluation of their performance and potential future contribution. The fact that either may have wished to be fired, for whatever personal reason of their own, is simply irrelevant.

Based on Mr. Gossen's correspondence, the Court finds that the alleged defamatory statements are related to the prospective judicial proceeding in that Defendant, through Mr. Gossen, made the statements in response to Mr. McKee's assertion that Defendant acted in an arbitrary and capri-

cious manner with regard to the benefits afforded to John Collins and Debbie Southworth, Plaintiffs herein.

Finally, Defendant, through Mr. Gossen, made the aforementioned alleged defamatory statements in correspondence that was sent to Mr. McKee. As the parties stipulated, either Mr. McKee or Mr. Bensabat subsequently notified Plaintiffs of the alleged defamatory statements. The Court finds that Defendant published the alleged defamatory statements solely to persons with interest in prospective judicial proceedings; that is, to Mr. McKee and Mr. Bensabat.

For the foregoing reasons, the Court holds that Defendant made the alleged defamatory statements concerning Plaintiffs prior to the filing of a prospective judicial proceeding which was both contemplated in good faith and was under serious consideration. Furthermore, the Court holds that the alleged defamatory statements were related to the prospective judicial proceeding and that they were published only to persons with an interest in the prospective judicial proceeding. Therefore, the Court holds that Defendant was absolutely privileged to publish the alleged defamatory statements concerning Plaintiffs.

Accepting all well-pled allegations set forth in the Complaint as true and construing the facts and reasonable inferences derived therefrom in the light most favorable to Plaintiffs, the Court holds that it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief and therefore, Defendant's Motion to Dismiss is hereby **GRANTED**. Accordingly, Defendant's Renewed Motion to Dismiss and the Memorandum of Red Roof Inns, Inc. in Support of its Renewed Motion to Dismiss or, Alternatively, Motion for Summary Judgment, are hereby **DENIED AS MOOT**.

The Clerk is directed to fax and mail a copy of this Memorandum Opinion and Order to all counsel of record and to publish a copy of this Memorandum Opinion and Order on the Court's website at http://www.wvsd.uscourts.gov. .